1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

ALBERT LEVELL RILEY,                    )        1:05-CV-0350 LJO JMD HC
                                        )
              Petitioner,               )
                                        )        FINDINGS AND RECOMMENDATION
      v.                                )        REGARDING PETITION FOR WRIT OF
                                        )        HABEAS CORPUS
                                        )
A.K. SCRIBNER,                          )        ORDER DIRECTING CLERK OF COURT
                                        )        TO CHANGE NAME OF RESPONDENT
              Respondent.               )
_____)

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Fresno County Superior Court.  A jury convicted Petitioner of attempted murder (Cal. Penal Code §§ 187(a), 664), attempted robbery (Cal. Penal Code §§ 211, 664), attempted carjacking (Cal. Penal Code §§ 215, 664), and assault with a firearm (Cal. Penal Code § 245(a)(2)). (Answer at 2.)  The jury also found that Petitioner personally used a firearm (Cal. Penal Code §§ 12022.5(a)(1), 12022.53(b), 1203.06(a)(1)), personally and intentionally discharged a firearm (Cal. Penal Code § 12022.53(c)), personally and intentionally discharged a firearm causing great bodily injury (Cal. Penal Code § 12022.53(d)), personally inflicted great bodily injury (Cal. Penal Code § 12022.7(a)), and personally inflicted great bodily injury causing paralysis (Cal. Penal Code §

1   12022.7(a), (b)).  (Id.)  The trial court sentenced Petitioner to a total term of 32 years to life.  (Id.)

2        Petitioner appealed to the California Court of Appeal.  On August 28, 2002, the court

3   affirmed the judgment.  (Answer at 2; Lodged Docs. 1-4.)

4        Petitioner then filed a petition for review in the California Supreme Court.  On November 13,

5   2002, the court denied the petition.  (Answer at 2; Lodged Docs. 5-6.)

6        On February 18, 2003, Petitioner filed a petition for writ of habeas corpus in the Fresno

7   County Superior Court.  On March 5, 2003, the court denied the petition.  (Lodged Docs. 7-8.)

8        On September 18, 2003, Petitioner filed a petition for writ of habeas corpus in the California

9   Supreme Court.  On June 9, 2004, the court denied the petition.  (Lodged Docs. 9-10.)

10        On February 10, 2005, Petitioner filed a second petition for writ of habeas corpus in the

11   California Supreme Court.  On December 14, 2005, the court denied the petition.  (Lodged Docs. 11-

12   12.)

13        On March 15, 2005, Petitioner filed the instant petition in this Court.  The petition raises the

14   following fifteen grounds for relief: 1) denial of right to self-representation violated Sixth and

15   Fourteenth Amendments; 2) ineffective assistance of trial counsel based on failure to secure

16   testimony of Delma Wilks; 3) imposition of 25-years-to-life firearm enhancement under Penal Code

17   section 12022.53(d) violated ban on cruel and unusual punishment; 4) imposition of 25-years-to-life

18   firearm enhancement under Penal Code section 12022.53(d) violated due process and equal

19   protection; 5) instructing the jury with CALJIC 17.41.1 violated rights to trial by fair and impartial

20   jury and to unanimous verdict; 6) trial court committed sentencing error when it imposed, then

21   stayed, the enhancement for great bodily injury under Penal Code section 12022.7 when it also

22   imposed the enhancement under section 12022.53(d); 7) various claims of ineffective assistance of

23   trial counsel; 8) ineffective assistance of trial counsel based on failure to move for mistrial after

24   jurors observed Petitioner in shackles; 9) insufficient evidence to support convictions for attempted

25   robbery and attempted carjacking; 10) ineffective assistance of trial counsel based on failure to

26   investigate and put forth a self-defense or accidental shooting defense; 11) violation of confrontation

27   rights when trial court allowed Officer Irel Del Valle to testify regarding the victim's statements; 12)

28   ineffective assistance of trial and appellate counsel based on the failure to object to, or raise on

1   appeal, Petitioner's claims of Confrontation Clause violations; 13) trial court improperly admitted

2   testimony of prosecution fingerprint expert and trial and appellate counsel were ineffective in failing

3   to "press" the objection to the evidence and raise the issue on appeal; 14) Petitioner is actually

4   innocent of the crimes for which he was convicted; and 15) ineffective assistance of appellate

5   counsel.

6          On June 15, 2006, Respondent filed a response to the petition.

7          On December 8, 2006, Petitioner filed a traverse to the answer.

8                              **FACTUAL BACKGROUND**[1]

9          At approximately 9:15 in the morning of June 24, 1999, Santos Garcia was driving on East

10  Drummond Street near Bardell in Fresno looking for a place to park.  As Garcia slowed, a man

11  opened the passenger door, sat in the front seat, pulled out a chrome revolver and pointed it at

12  Garcia's head.  The man said about two words in English; however, Garcia, who spoke only Spanish,

13  did not understand them.

14         Garcia reached out with his right arm and attempted to lower the gun by lowering the man's

15  hand.  The man fired the gun immediately, striking Garcia on his right shoulder.  Garcia let go of the

16  steering wheel, causing the vehicle to go up over a curb and come to rest against a chain link fence

17  surrounding a house.  Garcia described his attacker as a tall, medium build, African-American male,

18  with short curly hair and a scar on the left side of his forehead.  As a result of the shooting, Garcia

19  was permanently paralyzed from his midchest to his feet.

20         Fresno Police Officers Irel Del Valle and James Rossetti responded to the shooting, arriving

21  at 9:18 am.  Officer Del Valle accompanied Garcia to the hospital.  He told Del Valle, in Spanish,

22  that his attacker had gotten into his car and said, "Give me your fucking money and your car."

23  Garcia described the assailant as a tall (six feet seven inches or taller), 20-year-old, African-

24  American male with a three- to four-inch scar on his forehead.  He also stated that he had seen the

25  man in the neighborhood during the past month and would be able to recognize him if he saw him

26  again.  However, Garcia did not identify Petitioner from a photographic array at the hospital; he was

27

28
───────────────
        [1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of August 8, 2002 and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1); Lodged Doc. 1.

also unable to identify Petitioner at trial.  In fact, Garcia identified two different men as his attacker during the photographic lineup.

Katherine J. lived on East Drummond Street at the time of the incident.  At the time of the crash, her children, 10-year-old Erica and 9-year-old Rodney, were watching television in the living room while she was sleeping in her bedroom.  Erica woke up Katherine, who dialed 911 and ran outside.  Katherine told the 911 operator that a tall, African-American male shot Garcia and then ran down Bardell Street.  However, at trial, Katherine insisted that she only saw Garcia alone in the vehicle after the shooting.  Officer James Brewer of the Fresno Police Department testified that he had interviewed Katherine shortly after the incident.  She stated that she had seen an African-American male exit from the passenger side of Garcia's vehicle and run southbound on Bardell.

Fresno Police Officer Dean Cardinale also responded to the shooting.  Shortly after the incident, Cardinale interviewed Erica, who stated that she had been looking out the window when she saw Garcia's vehicle come to a stop on the front lawn.  She saw a six feet six inches tall African-American man, weighing over 200 pounds, get out of the passenger side of the vehicle with a gun in his hand.  The man put the gun in his pocket and then ran south down Bardell Street.  She stated that she recognized the man as one of her neighbors, although she did not know his name.  However, she did know where he lived and pointed out the residence to Cardinale.  It was later established that Petitioner lived at that residence.

At trial, Erica testified that she did not see anyone exit Garcia's vehicle.  She also stated that an officer had taken her to identify a man; however, she stated she could not make an identification because she had not seen him.  She also denied ever pointing out a house to the officers.

Rossetti testified that he interviewed Rodney shortly after the incident.  Rodney stated that he was inside when he heard a shot and then saw a man run from the vehicle and around the corner.  A prosecution investigator testified that he spoke with Rodney three months after the shooting.  Rodney told him that he had been watching television when he heard a shot.  He then went to get his mother and they went outside.  He saw a man running south down Bardell, but he did not see his face.  At trial, Rodney testified that he did not remember the incident and he did not remember speaking to the police or the prosecutor's investigator about the incident.

1    Cloyd Marshall also resided on East Drummond.  He testified that he went outside after the

2  shooting and saw Petitioner walking at a fast pace in a southerly direction down Bardell.  The day

3  after the shooting, Detective Torres contacted Marshall and showed him a photographic array.

4  Marshall identified Petitioner as the man he had seen walking from the scene of the shooting.

5  Marshall also told Torres that if he was looking for Petitioner, he was on the "right track."  Torres

6  testified that Marshall told him he saw Petitioner running from the scene.  He also noted that it was

7  difficult to get Marshall to cooperate with the investigation.

8    Fingerprint expert Christina Stirling testified that she processed Garcia's car for fingerprints

9  about an hour after the shooting.  She recovered two fingerprints from the passenger door.  After

10  conducting a fingerprint analysis, she determined that the fingerprints belonged to Petitioner.

11    A partial palm print was also recovered from the door; however, it did not match Petitioner's

12  palm print, and Stirling was unable to positively identify it.

13    The day after the shooting, Fresno Police Officer William Andrews observed Petitioner get

14  into the back of a sport utility vehicle driven by a female.  Once inside the vehicle, Petitioner put his

15  head down, as if he were lying down.  The woman drove off and was stopped by a marked patrol unit

16  a short time later.  Both Petitioner and the female were ordered out of the vehicle.  Petitioner

17  remained lying down until he exited the vehicle.  A search of the vehicle revealed two empty

18  suitcases and an empty garment bag.

19    Officer Andrews testified that Petitioner had a scar on his forehead and was six feet four

20  inches to six feet five inches tall.

21    Petitioner presented no defense.

22                                **DISCUSSION**

23  **I.  Jurisdiction**

24    Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

25  to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

26  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

27  375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

28  Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court,

1    which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

2    Accordingly, the Court has jurisdiction over the action.

3        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

4    1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

5    Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114

6    F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996),

7    *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320

8    (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition

9    was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

10   **II.  Legal Standard of Review**

11       This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

12   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

13   Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

14       The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

15   Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

16   Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of

17   the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

18   clearly established Federal law, as determined by the Supreme Court of the United States" or

19   "resulted in a decision that was based on an unreasonable determination of the facts in light of the

20   evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at

21   70-71; see Williams, 529 U.S. at 413.

22       As a threshold matter, this Court must "first decide what constitutes 'clearly established

23   Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at 71,

24   *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

25   must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

26   of the relevant state-court decision."  Id., *quoting* Williams, 592 U.S. at 412.  "In other words,

27   'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set

28   forth by the Supreme Court at the time the state court renders its decision."  Id.

1    Finally, this Court must consider whether the state court's decision was "contrary to, or

2    involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

3    *quoting* 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant

4    the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

5    question of law or if the state court decides a case differently than [the] Court has on a set of

6    materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

7    "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court

8    identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

9    that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

10    "[A] federal court may not issue the writ simply because the court concludes in its

11    independent judgment that the relevant state court decision applied clearly established federal law

12    erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

13    federal habeas court making the "unreasonable application" inquiry should ask whether the state

14    court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

15    Petitioner has the burden of establishing that the decision of the state court is contrary to or

16    involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle,

17    94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

18    Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

19    decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.

20    1999).

21    AEDPA requires that we give considerable deference to state court decisions.  The state

22    court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

23    interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*,

24    537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

25    **III.  Review of Petitioner's Claims**

26    **A.  Ground One**

27    Petitioner argues that the trial court violated his constitutional right to self-representation

28    when it failed to act on Petitioner's unequivocal request to represent himself.  Petitioner bases his

claim on a discussion that took place at a hearing on Friday, September 24, 1999.  After Petitioner's

counsel requested a continuance of the trial, which was scheduled to begin the following Monday,

Petitioner stated, "I would like to exercise my pro per status rights by right of law because I don't

feel that I should have to waive time."  (RT at 2.)  The trial court stated that a hearing could be set,

but cautioned Petitioner of the seriousness of the decision that he was making.  (RT at 2-3.)

Petitioner stated that he had a right to a speedy trial and that he would like a speedy trial.  (RT at 3.)

Petitioner then stated that he was ready to go to trial, but that he had not yet received discovery.  (Id.)

After the trial court vacated the September 27 trial date based on counsel's request, Petitioner stated,

"I'll just go ahead and let him do his thing.  I'm going to trial on the 27th so that's a violation of my

speedy trial rights anyway so there's nothing I can do."  (RT at 4.)  The trial court then inquired

whether Petitioner wanted a hearing on the issue of representing himself before the 27th, with

Petitioner responding, "Yes, I would love to have that hearing."  (RT at 4.)  The court, however,

informed Petitioner that a hearing could not be held before September 27, as it was the next court

day, and asked Petitioner what he wished to do.  (RT at 5.)  Petitioner, after a discussion regarding a

new trial date, waived his speedy trial rights, agreeing to a trial date of November 8.  (RT at 6.)  The

court then stated "if there's anything else that you wish to file or do you may do that but as the Court

understands there is nothing else that is before the Court right now, Mr. Riley; is that correct?"  (Id.)

Petitioner responded, "Yes, sir," and did not subsequently raise the issue of self-representation.  (RT

at 6.)

        This claim was presented in an appeal to the California Court of Appeal, which affirmed the

judgment on August 28, 2002.  (Lodged Docs. 1-4.)  The issue was then raised in a petition to the

California Supreme Court, which summarily denied review.  (Lodged Doc. 5-6.)  The California

Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims

presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501

U.S. 797, 803 (1991).

        In rejecting Petitioner's claim, the Court of Appeal found that Petitioner's request to

represent himself was at best equivocal and that, in any case, he subsequently withdrew the motion.

(Lodged Doc. 1 at 6-9.)

1    Under the Sixth Amendment, a criminal defendant has the right to waive his right to counsel

2 and represent himself.  Faretta v. California, 422 U.S. 806, 835 (1975).  "[T]he first requirement in

3 this process is that the request to forego the assistance of counsel be unequivocal."  U.S. v.

4 Robinson, 913 F.2d 712, 714 (9th Cir. 1990).  "The second requirement under this circuit's reading

5 of *Faretta* is that the defendant's waiver of the right to counsel must be made knowingly and

6 intelligently; that is, a criminal defendant must be aware of the nature of the charges against him, the

7 possible penalties, and the dangers and disadvantages of self representation."  Id. (quotation marks

8 omitted).  "In addition to being knowing and intelligent, a waiver of the right to counsel must also be

9 voluntary."  Id. at 715.

10    The state court's determination that Petitioner's request was equivocal and eventually

11 withdrawn was not unreasonable.  While Petitioner initially stated that he wished to exercise his right

12 to self-representation because he did not want to "waive time," he later agreed to let counsel "do his

13 thing" once it became clear that the trial would be continued from September 27.  Further, after

14 Petitioner learned that he could not obtain a hearing on the self-representation issue prior to

15 September 27, he waived his right to a speedy trial, then agreed with the trial court that nothing

16 further was pending.  Petitioner also did not attempt to revisit the self-representation issue despite the

17 trial court informing him that he was free to file or do whatever he felt was necessary.

18    **B.  Ground Two**

19    Petitioner argues that his trial counsel was ineffective in failing to secure the testimony of his

20 aunt, Delma Wilks.  Counsel had spoken to Ms. Wilks and, despite the fact she was reluctant to

21 appear because there was a warrant out for her arrest, counsel did not subpoena her.  (Traverse, Ex. I

22 at 15-19.)  Counsel claims that Ms. Wilks would have testified that she knew the victim, that he had

23 often dropped her off at Petitioner's house, and that Petitioner came into contact with the victim's

24 vehicle on at least one of those occasions.  (Id. at 16.)  Ms. Wilks's declaration, which was submitted

25 in support of Petitioner's motion for new trial, stated that the victim was a drug dealer who Petitioner

26 regularly purchased crack cocaine from, that she saw them together in the victim's vehicle at 9:00

27 a.m. on the morning of the incident when the victim was dropping Petitioner off at her house, and

28 that she failed to appear to testify at Petitioner's trial because of an outstanding warrant for her arrest.

1   (CT at 1041-42.)

2   This claim was presented in an appeal to the California Court of Appeal, which affirmed the

3   judgment on August 28, 2002.  (Lodged Docs. 1-4.)  The issue was then raised in a petition to the

4   California Supreme Court, which summarily denied review.  (Lodged Docs. 5-6.)  The California

5   Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims

6   presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501

7   U.S. 797, 803 (1991).

8   In rejecting Petitioner's claim, the Court of Appeal found that Petitioner did not show

9   prejudice resulting from counsel's actions as it was not clear that Ms. Wilks would have testified

10  even if she had been subpoenaed and because there was a significant amount of evidence other than

11  the fingerprints that placed Petitioner at the scene.  The court further noted that Ms. Wilks's

12  declaration would have, at least in part, undermined Petitioner's case as it would have placed

13  Petitioner near the scene of the crime and disclosed a motive for the shooting.  (Lodged Doc. 1 at 12-

14  15.)

15  The law governing ineffective assistance of counsel claims is clearly established for the

16  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151

17  F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

18  assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668,

19  687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

20  counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

21  or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466

22  U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard

23  of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of

24  reasonable professional judgment considering the circumstances.  Id. at 688; United States v.

25  Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is

26  highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the

27  wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21

28  F.3d 1446, 1456 (9th Cir.1994).

1    Second, the petitioner must demonstrate that "there is a reasonable probability that, but for

2 counsel's unprofessional errors, the result ... would have been different." <u>Strickland</u>, 466 U.S. at 694.

3 Petitioner must show that counsel's errors were so egregious as to deprive the defendant of a fair

4 trial, one whose result is reliable. <u>Id.</u> at 688.  The court must evaluate whether the entire trial was

5 fundamentally unfair or unreliable because of counsel's ineffectiveness. <u>Id.</u>; <u>Quintero-Barraza</u>, 78

6 F.3d at 1345; <u>United States v. Palomba</u>, 31 F.3d 1356, 1461 (9th Cir. 1994).

7    A court need not determine whether counsel's performance was deficient before examining

8 the prejudice suffered by the petitioner as a result of the alleged deficiencies.  <u>Strickland</u>, 466 U.S. at

9 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in

10 prejudice must necessarily fail.  However, there are certain instances which are legally presumed to

11 result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of

12 counsel or where the State has interfered with counsel's assistance.  <u>Strickland</u>, 466 U.S. at 692;

13 <u>United States v. Cronic</u>, 466 U.S. 648, 659 & n.25 (1984).  Ineffective assistance of counsel claims

14 are analyzed under the "unreasonable application" prong of <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

15 <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (9th Cir. 2000).

16    The state court's determination that Petitioner failed to establish prejudice was not

17 unreasonable, as Petitioner has not shown a reasonable likelihood that Ms. Wilks would have

18 testified even if she had been subpoenaed.  Petitioner's trial counsel's declaration, which was

19 submitted in support of Petitioner's motion for new trial, states that counsel spoke to Ms. Wilks the

20 day before the trial and that she stated she would appear to testify. (CT at 1068.)  Nevertheless, she

21 did not appear the following day and counsel was informed by Petitioner's mother "in no uncertain

22 terms" that Ms. Wilks was not going to appear. (CT at 673.)  Further, Ms. Wilks's declaration does

23 not suggest that she would have appeared if she had been subpoenaed, as she states that she avoided

24 appearing because she did not want to be arrested on an outstanding warrant. (CT at 1041-42.)

25    Even assuming Ms. Wilks would have appeared and testified in accordance with her

26 declaration, Petitioner has not shown a reasonable probability that the outcome would have been

27 different as there was evidence aside from the fingerprints establishing Petitioner's involvement in

28 the crime.  This evidence included the physical description given by the victim, the description given

1    by Erica and the fact that she identified Petitioner's house as the home of the man seen running from

2    the scene, the description given by Katherine, and the identification made by Marshall.  Further, Ms.

3    Wilks's expected testimony would have, at least to some extent, undermined Petitioner's case as it

4    would have put him at the scene near the time of the incident and shown that a drug deal gone bad

5    was a possible motive for Petitioner to commit the crime.

6              **C.  Ground Three**

7              Petitioner argues that the trial court's imposition of the 25-years-to-life firearm enhancement

8    under Penal Code section 12022.53(d), as applied to him, constituted cruel and unusual punishment.

9    Petitioner argues that the punishment is disproportionate to his crime, to other sentences in

10   California, and to other states' firearm enhancements.

11            This claim was presented in an appeal to the California Court of Appeal, which affirmed the

12   judgment on August 28, 2002.  (Lodged Docs. 1-4.)  The issue was then raised in a petition to the

13   California Supreme Court, which summarily denied review.  (Lodged Docs. 5-6.)  The California

14   Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims

15   presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501

16   U.S. 797, 803 (1991).

17            In rejecting Petitioner's claim, the Court of Appeal, referencing analyses done in prior

18   California Court of Appeal opinions, found that the 25-years-to-life enhancement did not constitute

19   cruel and unusual punishment.  (Lodged Doc. 1 at 15.)

20            "The Eighth Amendment ... contains a narrow proportionality principle that applies to

21   noncapital sentences.  Under this narrow proportionality principle, the Eighth Amendment does not

22   require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences

23   that are grossly disproportionate to the crime. [¶]  Although the Supreme Court has reviewed Eighth

24   Amendment challenges to a number of state and federal sentences, it has struck down only two of

25   them over the past century.  In *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed.

26   793 (1910), the Court invalidated under the Eighth Amendment a sentence of fifteen years in chains

27   and at hard labor, plus permanent surveillance and civil disabilities, for the crime of falsifying a

28   public document.  Seventy-three years later, in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77

1   L.Ed.2d 637 (1983), the Court invalidated under the Eighth Amendment a sentence of life

2   imprisonment without the possibility of parole imposed under South Dakota law against a nonviolent

3   recidivist whose final crime was writing a no account check with the intent to defraud." U.S. v.

4   Angelos, 433 F.3d 738, 750 (10th Cir. 2006) (citations and quotation marks omitted).

5      "In contrast to these two cases, the Supreme Court has rejected Eighth Amendment

6   challenges to the following sentences:

7      • A life sentence, with the possibility of parole, under a Texas recidivist statute for
       successive convictions of (1) fraudulent use of a credit card to obtain $80 worth of
8      goods or services, (2) passing a forged check in the amount of $28.36, and (3)
       obtaining $120.75 by false pretenses. *Rummel v. Estelle,* 445 U.S. 263, 285, 100
9      S.Ct. 1133, 63 L.Ed.2d 382 (1980).

10     • A forty-year sentence for possession and distribution of 9 ounces of marijuana.
       *Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982).

11
       • A life sentence, without the possibility of parole, for possession of more than 650
12     grams of cocaine. *Harmelin,* 501 U.S. at 1005, 111 S.Ct. 2680.

13     • A twenty-five year to life sentence imposed under a California recidivist statute for
       the offense of felony grand theft (i.e., stealing three golf clubs worth approximately
14     $1,200). *Ewing,* 538 U.S. at 30-31, 123 S.Ct. 1179.

15     • Two consecutive twenty-five-year to life sentences under a California recidivist
       statute for two counts of petty theft. *Lockyer v. Andrade,* 538 U.S. 63, 77, 123 S.Ct.
16     1166, 155 L.Ed.2d 144 (2003).

17  Considered together, these cases clearly support the Supreme Court's recent statement in *Andrade*

18  that [t]he gross disproportionality principle reserves a constitutional violation for only the

19  extraordinary case." Id. at 750-51.

20     The state court's determination that the 25-years-to-life enhancement was not cruel and

21  unusual punishment was not unreasonable, as this is not an "extraordinary" case in which the

22  sentence was grossly disproportionate to the crime for which it was imposed. See U.S. v. Khan, 461

23  F.3d 477, 495 (4th Cir. 2006) (finding that severe, mandatory penalties may be cruel, but that they

24  are not unusual, noting that the Supreme Court has never held that a sentence to a specific term of

25  years constituted cruel and unusual punishment).

26     **D.  Ground Four**

27     Petitioner argues that Penal Code section 12022.53 violates due process and equal protection

28  because it is irrational and because it results in unreasonably disparate punishment of similar

offenders whose only difference is their deadly weapon of choice.

This claim was presented in an appeal to the California Court of Appeal, which affirmed the judgment on August 28, 2002. (Lodged Doc. 1.) The issue was then raised in a petition to the California Supreme Court, which summarily denied review. (Lodged Doc. 6.) The California Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that the enhancement does not violate due process or equal protection, referencing prior California Court of Appeal opinions finding that the enhancement does not treat similarly-situated groups unequally and that it is rationally related to a legitimate state interest, as it protects the public from firearms. (Lodged Doc. 1 at 15.)

"The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws. This provision creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly. If a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end." Vacco v. Quill, 521 U.S. 793, 799 (1997) (citations and quotation marks omitted). In the sentencing context, an argument based on the Due Process Clause, which forbids imposing penalties based on arbitrary distinctions, essentially duplicates an argument based on equal protection. Chapman v. U.S., 500 U.S. 453, 465 (1991).

The state court's determination that section 12022.53 does not violate due process or equal protection was not unreasonable, as the mandatory sentences imposed under the section are rationally related to the legitimate purpose of discouraging the use of firearms in the commission of violent crimes. See U.S. v. Khan, 461 F.3d 477, 495 (4th Cir. 2006) (finding no equal protection or due process violation as "[d]iscouraging and preventing the use of firearms in the commission of crimes of violence constitutes a legitimate state purpose" and "mandatory sentencing rationally relates to this legitimate purpose"); U.S. v. Angelos, 433 F.3d 738, 754 (10th Cir. 2006) (finding that

1   mandatory minimum sentencing scheme was rationally related to legitimate purpose of attempting to

2   combat the dangerous combination of drugs and guns); U.S. v. Ellsworth, 456 F.3d 1146, 1149 (9th

3   Cir. 2006) (stating that rational basis standard of review applies to equal protection challenges based

4   on comparison of allegedly disparate sentences).

5          **E.  Ground Five**

6          Petitioner argues that instructing the jury with CALJIC 17.41.1 violated his Sixth and

7   Fourteenth Amendment rights to trial by a fair and impartial jury and to a verdict by a unanimous

8   jury.  The instruction reads as follows:

9              The integrity of a trial requires that jurors at all times during their deliberations,
               conduct themselves as required by these instructions.  Accordingly, should it occur
10             that any juror refuses to deliberate or expresses an intention to disregard the law or to
               decide the case based on penalty or punishment or any other improper basis, it is the
11             obligation of the other jurors to immediately advise the Court of the situation.

12  (CT at 948.)

13         This claim was presented in an appeal to the California Court of Appeal, which affirmed the

14  judgment on August 28, 2002.  (Lodged Docs. 1-4.)  The issue was then raised in a petition to the

15  California Supreme Court, which summarily denied review.  (Lodged Docs. 5-6.)  The California

16  Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims

17  presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501

18  U.S. 797, 803 (1991).

19         In rejecting Petitioner's claim, the Court of Appeal noted that the California Supreme Court

20  had already found that the instruction did not infringe upon any constitutional right.  (Lodged Doc. 1

21  at 17.)

22         The state court's determination was not unreasonable because no Supreme Court case

23  establishes that such an instruction violates any constitutional right.  Brewer v. Hall, 378 F.3d 952,

24  955-56 (9th Cir. 2004) ("It is clear, however, that the California appellate court's holding was not

25  contrary to or an unreasonable application of clearly established Supreme Court precedent, because

26  no Supreme Court case establishes that an instruction such as CALJIC 17.41.1 violates an existing

27  constitutional right.").

28

**F.  Ground Six**

Petitioner argues that the trial court committed sentencing error when it imposed, then stayed, the enhancements for great bodily injury under Penal Code section 12022.7 when it also imposed the 25-years-to-life enhancement under section 12022.53(d).  Petitioner argues that a stay of the great bodily injury enhancements was insufficient and that they should have been stricken.

This claim was presented in an appeal to the California Court of Appeal, which affirmed the judgment on August 28, 2002.  (Lodged Docs. 1-4.)  The issue was not presented to the California Supreme Court.

In rejecting Petitioner's claim, the Court of Appeal found that the legislative history of section 12022.53 and the California Rules of Court made clear that the proper procedure was to stay the great bodily injury enhancements, rather than strike them, to prevent Petitioner from receiving an undeserved windfall if the 25-years-to-life enhancement was later stricken.  (Lodged Doc. 1 at 17-20.)

"Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994); see also Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993) (holding that "claim regarding merger of convictions for sentencing is exclusively concerned with state law and [is] therefore not cognizable in a federal habeas corpus proceeding"); Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (refusing to address merits of whether assault with a deadly weapon qualified as a serious felony under California's sentence enhancement provisions as question was purely one of state sentencing law).

Petitioner's claim that the trial court erred when it imposed, then stayed, the enhancements for great bodily injury under Penal Code section 12022.7 is not reviewable in a federal habeas proceeding as it is purely a question of state sentencing law.  Further, Petitioner has failed to show that staying the enhancements rather than striking them was fundamentally unfair, as it did not result in any prejudice to him such as an increase in his sentence.

**G.  Ground Seven**

Petitioner makes numerous claims of ineffective assistance of trial counsel.  As stated above,

1   he must show deficient performance by counsel and prejudice.  Strickland v. Washington, 466 U.S.

2   668, 687, 691-92 (1984).

3          These claims were presented in a petition for writ of habeas corpus to the Fresno County

4   Superior Court, which was denied on March 5, 2003.  (Lodged Docs. 7-8.)  The issues were then

5   raised in a petition for writ of habeas corpus to the California Supreme Court, which was summarily

6   denied.  (Lodged Docs. 9-10.)  The California Supreme Court, by its "silent order" denying the

7   petition, is presumed to have denied the claims presented for the same reasons stated in the opinion

8   of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

9          In rejecting the claims, the Superior Court found that Petitioner had not shown prejudice

10  resulting from counsel's actions, noting that many of the claims were based on counsel's failure to

11  put forth the conflicting defense theories of misidentification and self-defense.  (Lodged Doc. 8 at 1-

12  2.)

13          1.  Failure to provide witness statements

14          Petitioner argues that his former trial counsel, Jack Weiss, provided ineffective assistance

15  when he failed to provide Petitioner's new counsel, Linden Lindahl, with certain reports and

16  statements.  Petitioner argues that Mr. Lindahl was not able to properly prepare a defense strategy or

17  engage in  effective cross-examination because he did not obtain the July 28, 1999 statement of Erica

18  Wainwright.

19          At trial, a police officer testified that, shortly after the incident, Erica told him that she saw a

20  person exit the victim's vehicle with a gun and run down the street.  She recognized the man as one

21  of her neighbors and, when asked where he lived, she identified Petitioner's residence.  Erica

22  testified, however, that she did not see a man exit the vehicle and she denied identifying a residence

23  to police.  In the July 28, 1999 statement Erica gave to an investigator, she stated that she observed a

24  black man run away from the scene but that she never saw his face and could not make an

25  identification of him.  (Petition, Ex. C at 1.)  Erica denied seeing the man do anything and she denied

26  pointing out where Petitioner lived to police.  (Id. at 1-2.)  Mr. Lindahl declares that, if he would

27  have obtained the July 28, 1999 statement prior to trial, he would have used it as a prior consistent

28  statement to bolster Erica's trial testimony.  (Petition, Ex. A, ¶ 12.)

1    The state court's determination was not unreasonable, as Petitioner has not established a

2    reasonable probability that the result of his trial would have been different if Erica's July 18, 1999

3    statement was presented in his defense.  The jury was aware of the conflicting testimony of Erica,

4    that she had not seen anyone at the scene, and of the police officer, who stated that Erica had given a

5    detailed description of the suspect and pointed out Petitioner's residence.  The July 18, 1999

6    statement, while generally consistent with Erica's trial testimony, is not significant enough to

7    establish a reasonably likelihood of a different result, particularly given the other evidence against

8    Petitioner including the fingerprint evidence and other eyewitness testimony.

9        2.  Failure to investigate and prepare for trial

10   Petitioner argues that his trial counsel failed to conduct an adequate investigation into the

11   facts surrounding the allegations against him and into the defenses available to him.  Petitioner

12   claims that counsel should have hired an investigator and independent experts and that he filed

13   inadequate pretrial motions.  Petitioner fails, however, to specify what facts would have been

14   discovered through further investigation or expert analysis, or what motions could have been filed,

15   that would have resulted in a different outcome.  See Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th

16   Cir. 1995) ("Absent an account of what beneficial evidence investigation into any of these issues

17   would have turned up, [defendant] cannot meet the prejudice prong of the *Strickland* test.").

18       3.  Failure to consult

19   Petitioner claims that his trial counsel failed to spend enough time consulting with him

20   regarding the facts of the case and trial strategy.  Petitioner fails to identify in what way further

21   consultation would have affected the outcome of his trial.

22       4.  Failure to challenge prosecution witnesses

23   Petitioner argues that his trial counsel was ineffective in failing to adequately challenge the

24   testimony of prosecution witnesses.  In support of his claim, Petitioner identifies various portions of

25   witnesses' testimony that were inconsistent or that conflicted with other evidence.  However, the jury

26   heard the various inconsistencies and conflicts and was free to consider them.  Petitioner does not

27   specify what counsel should have done to "challenge the validity" of the various statements, and he

28   has not shown that any such challenge was likely to change the outcome of the trial.

1    5.  Failure to object to inadmissible evidence

2        Petitioner, in his motion for new trial, argued that his trial counsel was ineffective in failing

3    to secure the testimony of Delma Wilks, who would have provided an "innocent explanation" of the

4    presence of Petitioner's fingerprints on the victim's vehicle.  (CT at 1037-40.)  The trial court denied

5    the motion, relying in part on Petitioner's previously suppressed statement in which he admitted

6    being present in the victim's vehicle, because there was evidence other than the fingerprints that

7    placed Petitioner at the scene.  (RT at 512-19.)  Here, Petitioner argues that his trial counsel was

8    ineffective in failing to object to the improper consideration of the suppressed statement.

9        Petitioner has not shown prejudice resulting from counsel's failure to object, however, as the

10   court's basis for denying the motion was not solely the suppressed statement, but also the trial

11   testimony of independent witnesses who placed Petitioner at the scene.  (RT at 517.)

12       6.  Failure to develop a viable defense strategy

13       Petitioner argues that his trial counsel was ineffective in failing to develop an effective trial

14   strategy.  Petitioner claims that, if counsel had conducted an adequate investigation, he would have

15   discovered the basis for a "self-defense/accidental shooting defense."  Petitioner also claims,

16   however, that "[c]ounsel possessed evidence that Santos Garcia was dealing crack-cocaine and

17   involved in a drug deal gone bad with petitioner, struggled over a gun Garcia pulled and an

18   accidental shooting occurred, yet he failed to use this information to develop a defense."  (Petition at

19   20.)

20       Counsel could not put forth the conflicting theories of misidentification and self-defense.

21   Petitioner has not shown that counsel failed to adequately investigate Petitioner's claim of self-

22   defense or that he performed deficiently by choosing to employ a misidentification defense rather

23   than arguing self-defense.

24       7.  Failure to present available evidence

25       Petitioner argues that his trial counsel was ineffective in failing to present "evidence

26   concerning an on-going conflict and animosity between the Fresno County Public Defender's Office

27   and the law firm of Barker and Associates which adversely affected the conduct of petitioner's

28   defense."  (Petition at 22.)  In support of his claim, Petitioner has submitted an article from the

1   California Lawyer.  (Petition, Ex. D.)

2       Petitioner has not shown deficient performance or prejudice, however, as the article does not

3   establish that there was any conflict relating to Petitioner's case or that the outcome of Petitioner's

4   trial was adversely affected.

5       **H.  Ground Eight**

6       Petitioner argues that his trial counsel was ineffective in failing to move for a mistrial based

7   on the jury viewing Petitioner in shackles.  On November 16, 1999, the trial court announced that it

8   had been informed by the clerk that some of the jurors may have viewed Petitioner in restraints when

9   he was being led from the courtroom for lunch.  (CT at 302.)  It was not clear how many jurors saw

10  Petitioner, how close they were to him, or how he was restrained.  (Id.)  Counsel declined the court's

11  offer to inquire about whether the juror's viewed Petitioner in restraints, stating that he believed it

12  would be more damaging to Petitioner to emphasize the point to the jury that he was in custody.  (Id.

13  at 303.)  Counsel instead accepted the trial court's offer to generally instruct the jury that it could not

14  consider the fact that Petitioner was in custody for any purpose.  (Id.)

15      This claim was presented in a petition for writ of habeas corpus to the California Supreme

16  Court, which was summarily denied on December 14, 2005.  (Lodged Docs. 11-12.)  When the state

17  court reaches a decision on the merits but provides no reasoning to support its conclusion, we

18  independently review the record to determine whether the state court clearly erred in its application

19  of Supreme Court law.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although

20  we independently review the record, we still defer to the state court's ultimate decision.  Id.

21      Petitioner has not shown deficient performance, as counsel's decision to accept the general

22  instruction to avoid drawing attention to the issue was a reasonable, tactical decision.  See

23  Rutherford v. U.S., 242 Fed.Appx. 427, 428 (9th Cir. 2007) (rejecting an ineffective assistance claim

24  where trial attorney's failure to call a witness was a defensible, tactical decision).  Further, Petitioner

25  has not shown prejudice resulting from counsel's failure to request further inquiry.  See Ghent v.

26  Woodford, 279 F.3d 1121, 1133 (9th Cir. 2002) ("The jury's 'brief or inadvertent glimpse' of a

27  shackled defendant is not inherently or presumptively prejudicial, nor has Ghent made a sufficient

28  showing of actual prejudice."); Rhoden v. Rowland, 172 F.3d 633, 636 (9th Cir. 1999) ("A jury's

1    brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom has not

2    warranted habeas relief.").

3         **I. Ground Nine**

4         Petitioner argues that there was insufficient evidence to convict him of attempted robbery and

5    attempted carjacking.

6         This claim was presented in a petition for writ of habeas corpus to the California Supreme

7    Court, which was summarily denied on December 14, 2005. (Lodged Docs. 11-12.)  When the state

8    court reaches a decision on the merits but provides no reasoning to support its conclusion, we

9    independently review the record to determine whether the state court clearly erred in its application

10   of Supreme Court law.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although

11   we independently review the record, we still defer to the state court's ultimate decision.  Id.

12        A federal habeas court reviews sufficiency of evidence claims by determining "whether, after

13   viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

14   have found the essential elements of the crime beyond a reasonable doubt."  Lewis v. Jeffers, 497

15   U.S. 764, 781 (1990); Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).  "[T]he standard must be

16   applied with explicit reference to the substantive elements of the criminal offense as defined by state

17   law."  Jackson v. Virginia, 443 U.S. 307, 324 n.16 (1979).

18         "An attempt to commit a crime requires a specific intent to commit the crime and a direct but

19   ineffectual act done toward its commission."  People v. Kipp, 18 Cal.4th 349, 376 (1998); see also

20   Cal. Penal Code § 664.  "Robbery is the felonious taking of personal property in the possession of

21   another, from his person or immediate presence, and against his will, accomplished by means of

22   force or fear."  Cal. Penal Code § 211.  "'Carjacking' is the felonious taking of a motor vehicle in the

23   possession of another, from his or her person or immediate presence, or from the person or

24   immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to

25   either permanently or temporarily deprive the person in possession of the motor vehicle of his or her

26   possession, accomplished by means of force or fear."  Cal. Penal Code § 215.

27        Here, the victim stated that the perpetrator entered his vehicle and pointed a gun at his head.

28   There was also testimony that the victim told police that, after the perpetrator entered the vehicle, he

1   said, "Give me your fucking money and your car."  Witnesses, including Katherine, Erica, and

2   Rodney, saw an African-American male exit the passenger seat of the victim's vehicle and run down

3   the street.  Erica further stated that she saw the man put a gun in his pocket and she took police to

4   Petitioner's house when asked where the man she had seen lived.  Cloyd Marshall stated that he saw

5   Petitioner walking down the street at a fast pace following the shooting and he was able to identify

6   Petitioner from a photographic array.  Further, fingerprint expert Christina Stirling testified that she

7   found Petitioner's fingerprints on the victim's vehicle.

8        This evidence was sufficient to establish that Petitioner entered the victim's vehicle and

9   attempted to take his money and vehicle using threats of violence.  Viewing the evidence in the light

10  most favorable to the prosecution, a reasonable trier of fact could have found Petitioner guilty of

11  attempted robbery and attempted carjacking.

12       **J.  Ground Ten**

13       Petitioner argues that his trial counsel was ineffective in using a misidentification defense

14  instead of investigating and putting forth a "self-defense, accidental shooting defense."  Petitioner

15  claims that counsel failed to obtain and utilize, among other things, 1) the July 28, 1999 statement

16  made by Erica Wainwright which was consistent with her trial testimony that she could not identify

17  the man seen running from the incident; 2) the July 28, 1999 statement of Mrs. Cloyd Marshall who

18  stated that the victim was a regular in the neighborhood and that the incident was not a carjacking;

19  and 3) the August 4, 1999 report in which Tita Carlos contradicted the victim's claim that he was in

20  the neighborhood to visit her.  (Decl. Albert Riley ¶ 12; Petition, Ex. C.)

21       This claim was presented in a petition for writ of habeas corpus to the California Supreme

22  Court, which was summarily denied on December 14, 2005.  (Lodged Docs. 11-12.)  When the state

23  court reaches a decision on the merits but provides no reasoning to support its conclusion, we

24  independently review the record to determine whether the state court clearly erred in its application

25  of Supreme Court law.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although

26  we independently review the record, we still defer to the state court's ultimate decision.  Id.

27       The state court did not clearly err in its application of Supreme Court law.  Petitioner

28  acknowledges that, prior to trial, he informed counsel of the factual basis for a potential self-defense

1   claim including his version of the incident and the expected testimony of witnesses such as Cloyd

2   Marshall, Tita Carlos, and Delma Wilks.  (Decl. Albert Riley ¶ 19-27.)  Petitioner has not shown that

3   counsel's investigation was deficient or that his decision to forego a self-defense claim in favor of a

4   misidentification defense was outside the reasonable range of professional assistance considering the

5   conflicting evidence and the victim's inability to identify the perpetrator.  See Bean v. Calderon, 163

6   F.3d 1073, 1082 (9th Cir. 1998) (rejecting ineffective assistance claim where counsel made a

7   reasonable strategic choice to present an alibi defense rather than a diminished capacity defense).

8              **K.  Ground Eleven**

9         Petitioner argues that his Sixth Amendment right to confront witnesses was violated when the

10  trial court allowed Officer Irel Del Valle to testify that the victim, Santos Garcia, told her that the

11  perpetrator said, "Give me your fucking money and your car."

12        This claim was presented in a petition for writ of habeas corpus to the California Supreme

13  Court, which was summarily denied on December 14, 2005.  (Lodged Docs. 11-12.)  When the state

14  court reaches a decision on the merits but provides no reasoning to support its conclusion, we

15  independently review the record to determine whether the state court clearly erred in its application

16  of Supreme Court law.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although

17  we independently review the record, we still defer to the state court's ultimate decision.  Id.

18        The Confrontation Clause of the Sixth Amendment bars the introduction of testimonial, out-

19  of-court statements by witnesses who are not subject to cross-examination.  U.S. v. Law, 528 F.3d

20  888, 912 (D.C. Cir. 2008).  It does not, however, apply to hearsay by a declarant who appears for

21  cross-examination at trial.  U.S. v. Mitchell, 502 F.3d 931, 966 (9th Cir. 2007); Crawford v.

22  Washington, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at

23  trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial

24  statements."); see also U.S. v. Owens, 484 U.S. 554, 564 (1988) (holding that Confrontation Clause

25  was not violated where trial court admitted out-of-court identification statement of a witness who

26  was unable, because of memory loss, to testify concerning the basis for the identification).

27        The state court did not clearly err in its application of Supreme Court law, as Petitioner had

28  the opportunity to cross-examine both Santos Garcia and Officer Del Valle regarding the statement

1    and he did so.  (CT at 165-81, 214-17.)

2        **L.  Ground Twelve**

3        Petitioner argues that his trial counsel was ineffective in failing to object on Confrontation

4    Clause grounds to Officer Del Valle's testimony regarding the victim's statement, "Give me your

5    fucking money and your car."  Petitioner further argues that his appellate counsel was ineffective in

6    not raising the issue on appeal.

7        These claims were presented in a petition for writ of habeas corpus to the California Supreme

8    Court, which was summarily denied on December 14, 2005.  (Lodged Docs. 11-12.)  When the state

9    court reaches a decision on the merits but provides no reasoning to support its conclusion, we

10   independently review the record to determine whether the state court clearly erred in its application

11   of Supreme Court law.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although

12   we independently review the record, we still defer to the state court's ultimate decision.  Id.

13       As stated above, Petitioner must show deficient performance by trial counsel resulting in

14   prejudice.  Strickland v. Washington, 466 U.S. 668, 687, 691-92 (1984).  Claims of ineffective

15   assistance of appellate counsel are also reviewed according to the two-pronged test set forth in

16   Strickland.  See, e.g., Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle,

17   792 F.2d 846, 847 (9th Cir. 1986).  Further, appellate counsel does not have a constitutional duty to

18   raise every nonfrivolous issue requested by defendant.  Jones v. Barnes, 463 U.S. 745, 751-54

19   (1983); Miller, 882 F.2d at 1434 n.10.  The weeding out of weaker issues is widely recognized as one

20   of the hallmarks of effective appellate advocacy.  Miller, 882 F.2d at 1434.  As a result, appellate

21   counsel will frequently remain above an objective standard of competence and have caused his client

22   no prejudice for the same reason - because he declined to raise a weak issue.  Id.

23       The state court did not clearly err in its application of Supreme Court law.  Petitioner has not

24   shown deficient performance by counsel or prejudice, as his Confrontation Clause claims lack merit

25   for the reasons previously discussed.

26       **M.  Ground Thirteen**

27       Petitioner argues that the trial court improperly admitted the testimony of Christina Stirling

28   who analyzed the fingerprints taken from the victim's vehicle.  Petitioner claims that Ms. Stirling's

1   analysis was inaccurate and unreliable and that she should not have been permitted to testify as an

2   expert witness.  Petitioner further argues that his trial counsel was ineffective in failing to press his

3   objection to the testimony after it was overruled by the trial court and that appellate counsel was

4   ineffective in failing to raise the claim on appeal.

5          These claims were presented in a petition for writ of habeas corpus to the California Supreme

6   Court, which was summarily denied on December 14, 2005.  (Lodged Docs. 11-12.)  When the state

7   court reaches a decision on the merits but provides no reasoning to support its conclusion, we

8   independently review the record to determine whether the state court clearly erred in its application

9   of Supreme Court law.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although

10  we independently review the record, we still defer to the state court's ultimate decision.  Id.

11         Federal habeas courts do not review questions of state evidence law.  Instead, a court may

12  only consider "whether the petitioner's conviction violated constitutional norms."  Jammal v. Van de

13  Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  "We therefore consider whether the admission of the

14  evidence so fatally infected the proceedings as to render them fundamentally unfair."  Id.  "Only if

15  there are no permissible inferences the jury may draw from the evidence can its admission violate

16  due process.  Even then, the evidence must be of such quality as necessarily prevents a fair trial."  Id.

17  at 920 (quotation marks omitted).

18         The state court did not clearly err in its application of Supreme Court law.  Ms. Stirling

19  testified that she had extensive training and experience in fingerprint analysis and that she had

20  qualified as an expert in numerous cases in Fresno County.  (CT at 260-63.)  She then testified

21  regarding the process of obtaining fingerprints, stated how she had done so in the present case, and

22  explained how she had conducted her analysis and reached her conclusions.  (CT at 264-82.)

23  Petitioner has not demonstrated that admission of the fingerprint evidence rendered the proceedings

24  unfair, as he has failed to state facts to support his conclusory claims that Ms. Stirling lacked the

25  qualifications to testify as an expert and that the techniques she used to analyze the fingerprints were

26  inaccurate and unreliable.  Further, Petitioner has not shown deficient performance by counsel or

27  prejudice resulting from the failure to "press" the objection to the evidence or raise the claim on

28  appeal.

1    **N.  Ground Fourteen**

2         Petitioner argues that he is actually innocent of the crimes for which he was convicted and

3    that, absent the constitutional errors alleged elsewhere in the petition, no jury would have convicted

4    him.  Petitioner also requests an evidentiary hearing on all disputed facts which were not developed

5    or resolved by the state courts.

6         "On collateral review of a state court conviction, a federal court must consider whether [an

7    evidentiary] hearing could enable an applicant to prove the petition's factual allegations, which, if

8    true, would entitle the applicant to federal habeas relief.  Additionally, in considering whether the

9    applicant would be entitled to federal habeas relief, a federal court must take into account the

10   deferential standards of 28 U.S.C. § 2254."  Estrada v. Scribner, 512 F.3d 1227, 1235 (9th Cir.

11   2008).

12        Petitioner has not set forth any new facts showing that he is actually innocent of the crimes

13   for which he was convicted or any facts warranting an evidentiary hearing.

14   **O.  Ground Fifteen**

15        Petitioner argues that appellate counsel was ineffective in failing to raise the issues set forth

16   in this petition on appeal.  Petitioner has not shown deficient performance by appellate counsel and

17   prejudice, however, for the reasons stated above.

18   **P.  Proper Respondent**

19        Petitioner is currently incarcerated at Folsom State Prison.  Respondent states that the warden

20   of that institution is Matthew Kramer.  (Answer at 1.)  Pursuant to Rule 25 of the Federal Rules of

21   Civil Procedure, the Clerk will be directed to substitute Matthew Kramer as Respondent in this

22   matter.

23                                    **RECOMMENDATION**

24        Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

25   DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

26   Respondent.

27        This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

28   United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

### ORDER

The Court HEREBY ORDERS that the Clerk of Court is DIRECTED to substitute Matthew Kramer as Respondent in this matter.


IT IS SO ORDERED.

**Dated:      July 24, 2008                            /s/ John M. Dixon**
                                                UNITED STATES MAGISTRATE JUDGE